# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **M.S. (a minor, by his parent and next friend, Sharonda Covington)** | ) ) ) ) | **AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |
| and | ) ) | |
| **Sharonda Covington** | ) ) | **CASE NO: 1:16-CV-00501** |
| and | ) ) | |
| **Derek Stepp** | ) ) | |
| Plaintiffs, individually and on behalf of all others similarly situated, | ) ) ) | |
| v. | ) ) | |
| **HAMILTON COUNTY DEPARTMENT OF EDUCATION** | ) ) ) | |
| and | ) ) | |
| **DURHAM SCHOOL SERVICES, L.P., individually** | ) ) ) ) | |
| and | ) ) | |
| **BENJAMIN COULTER, individually** | ) ) ) | |
| Defendants | ) ) | |

FILED

DEC 2 2 2016

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

Plaintiffs M.S., by his parent and next friend, Sharonda Covington; Sharonda Covington; and Derek Stepp, by and through counsel, on behalf of themselves and all others similarly situated, and pursuant to the Federal Rules of Civil Procedure and 42 U.S.C. §§ 1983, 1985, and 1988, hereby file this Complaint against the Hamilton County Department of Education; Durham School Services, L.P., individually; and Benjamin Coulter, individually (collectively, "Defendants"), and aver as follows:

1

# INTRODUCTION

On the afternoon of November 21, 2016, 24 year old Johnthony Walker drove school bus 366 at a dangerously high rate of speed on a narrow, twisting, and hilly residential street. The bus swerved to the right, struck a mailbox, swerved to the left, veered off the roadway, and struck a telephone pole with such force that the pole was sliced cleanly from the ground. The bus then flipped violently onto its side and slammed into a large tree, splitting the roof of the vehicle in two. On board the bus were 37 children from the Woodmore Elementary School in Chattanooga, Tennessee, who were on their way home to their families for the Thanksgiving holiday.

The scene can only be described as carnage. Five children died at the accident scene; one was decapitated. A sixth child died at the hospital. Another child's arm was sheared off at the shoulder. Some of the children were as young as six years old and were too young to tell the first responders their names or telephone numbers. After extricating the mangled and broken bodies of small children from the bus, many of the first responders were themselves treated for psychological trauma. Ultimately, six children died as a result of the accident, another six were admitted to the intensive care unit, dozens were treated at the emergency room and all were psychologically traumatized.

This horror was foreseeable, predictable and preventable.

The school bus operations had been outsourced to balance the books of the school district. To maximize profit, the contractor overcrowded routes and offered school bus drivers low pay, few hours and inadequate driver training and support. To avoid a self-created driver shortage, as they had experienced in other markets, the contractor sought out the most poorly

trained, inexperienced and poorly-qualified drivers to transport the most precious commodity of this community.

The contractor was an equal partner with the school district in this joint endeavor, and each stood to profit from the cost-savings. As such, the school district agreed to give the private contractor an equal voice in any rule, regulation or policy incidental to the operation of its school buses. But in an effort to ensure these cost reductions continued, the school district and the contractor created and fostered an atmosphere wherein they were deliberately indifferent to bus drivers' violations of the very regulations, rules and policies they had established —even when doing so meant placing the young children aboard those school buses at great risk.

The bus driver operating Bus 366 at the time of the November 21, 2016 crash was merely 24 years old—too young to even rent a car. Overwhelmed by the task of driving the school bus while simultaneously maintaining discipline aboard, the driver continually resorted to dangerous, malicious, and sadistic methods of controlling the children. These methods including slamming on the brakes to force the children into the seats in front of them, (commonly referred to as brake-checking), driving recklessly and at high rates of speed, and swerving the bus to throw the children about. The Defendants knew of the driver's behavior and knew that the children aboard Bus 366 were suffering and in fact had suffered injury because of it. For at least a month prior to the November 21st crash, the Defendants had actual prior knowledge of the danger which these children were exposed to twice a day. The Defendants also knew that this driver's conduct was a clear violation of the rules, regulations and policies that they had jointly established and which they were charged with enforcing. It was, however, Defendants' pattern, practice, and custom to ignore these rules and regulations, thereby authorizing the driver's conduct.

3

The Defendants could have protected the children on that bus from the danger they themselves had created—but they did not. Day after day Defendants handed the keys to Bus 366 to this driver, instructed the children to board the bus, and entrusted the driver with the lives of nearly forty children. In doing so, Defendants, acting under color of law, intentionally, recklessly and callously disregarded the Constitutional rights of the children on that bus—acts which ultimately caused Plaintiffs' injuries and the deaths of six children.

## JURISDICTION AND VENUE

1.     This action seeks monetary damages for Defendants' violations of rights, privileges, and immunities secured under the Fourteenth Amendment to the Constitution of the United States, pursuant to 42 U.S.C. § 1983; Defendants' conspiracy to deprive Plaintiffs of those rights, pursuant to 42 U.S.C. § 1985; and negligence, gross negligence, and battery.

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

3.     Venue is proper in the Eastern District of Tennessee because the acts, transactions, and omissions complained of herein all occurred within this District.

## THE PARTIES

4.     At all relevant times, Plaintiffs-Class Representatives M.S., by and through his parent and next friend, Sharonda Covington; Sharonda Covington; and Derek Stepp, were and are residents of Chattanooga, Tennessee.

5.     Plaintiff M.S., a minor, (DOB 2006), is proceeding in this action by and through his mother and next friend, Sharonda Covington. Sharonda Covington is the natural parent of M.S., and M.S. resides with her and his father, Derek Stepp.

6.     Defendant Hamilton County Department of Education, ("the District"), is a governmental body and a separate legal entity from Hamilton County. The District, at all times

relevant to this Complaint, was responsible for the provision of education to Hamilton County students, including, but not limited to the provision of student transportation. The District may be served through Dr. Kirk Kelly, Interim Superintendent, 3074 Hickory Valley Road, Chattanooga, Tennessee 37421.

7.     Defendant Durham School Services, L.P. ("Durham") is a Delaware Limited Partnership with its principal address and place of business at 1431 Opus Place, Suite 200, Downers Grove, Illinois 60515. Defendant is licensed to do business in Tennessee and does, in fact, regularly conduct business in Tennessee.  Specifically, Defendant Durham operates a full-service student transportation company that provides school bus services to the Hamilton County Department of Education, including Woodmore Elementary School.  Plaintiffs bring suit against Durham in its individual capacity. Durham may be served through its registered agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

8.     Defendant Benjamin Coulter, at all times relevant to this Complaint, was the Supervisor of Transportation for the District and in this capacity directed all aspects of student transportation with respect to Woodmore Elementary School.  Plaintiffs bring suit against Coulter in his individual capacity. Coulter may be served at 3074 Hickory Valley Road, Chattanooga, Tennessee 37421.

## STATEMENT OF FACTS

9.     In June of 1997, the urban school district of Chattanooga, Tennessee was merged into the rural school district of Hamilton County, Tennessee. Woodmore Elementary School is located with the former urban school district of Chattanooga.

10.     The Hamilton County Department of Education, "the District," is an entity that is legally separate from Hamilton County, but for which Hamilton County is considered financially responsible.

11.     Throughout all times relevant to this Complaint, the District exercised authority and control over the operation of Woodmore Elementary School and its staff. The District and Durham exercised exclusive, joint control over school bus transportation to and from Woodmore Elementary School.

12.     All Chattanooga public school children who ride school buses are transported by a single contractor, Durham. Durham is a subsidiary of National Express, LLC ("NELLC"). NELLC is a multi-national firm that touts itself as the largest provider of home to school transportation in the United States, transporting more than 1,000,000 school children each day.

13.     Durham School Services, L.P. was, at all times relevant to this Complaint a Common Carrier and therefore charged with the highest degree of care consistent with the practical conduct of its business, *i.e.,* the transportation of young schoolchildren to and from school.

### The July 1, 2013 Contract Between the District and Durham

14.     On July 1, 2013, the Hamilton County Department of Education, ("the District"), entered into a service contract with Durham. Pursuant to the terms of the four-year contract, Durham would be paid more than $45 Million to provide school bus service to the children of Chattanooga, including students attending Woodmore Elementary School.

15.     The terms of the contract require Durham to hold harmless and indemnify the Hamilton County Board of Education, Department of Education, its officers, agents and employees from, "every claim or demand which may be made by reason of injury to

6

person…sustained by any person…caused by, in whole or in part, or arising out of or related to any negligent act or omission, willful misconduct…of [Durham] or of any person…directly or indirectly employed by [Durham] in connection with its performance under the Agreement and irrespective of any allegation of fault against Hamilton County Board of Education, Hamilton County Department of Education and/or its Officers, Agents and Employees."

16.     The contract also requires that Durham, "shall endeavor to secure a dismissal of any such proceeding against Hamilton County Board of Education, Hamilton County Department of Education and/or its Officers, Agents and Employees promptly upon receipt of any such claim or demand and *shall substitute [Durham] as a party defendant.*" (Emphasis added).

17.     Further, the contract requires Durham to defend Hamilton County Board of Education, Hamilton County Department of Education, and/or its Officers, Agents and Employees, for any claim brought against them in connection with the performance of the agreement and to satisfy any judgment that may be rendered against them.

18.     The agreement establishes that Durham is required to defend the instant claims against the District and its officers, employees and agents, is required to satisfy any judgment against them from the instant claims, and is required to stand in their shoes in this matter.

19.     The contract provides that Durham and the District will:

    a.     Work together to establish school bus routes;

    b.     Work together to plan school bus scheduling; and

    c.     Work together to plan school bus assignments.

20.     The contract required Durham to purchase and equip its school buses with digital cameras and radios and established that were any person to alter or destroy the radios or digital

recordings, the private property of Durham, that person would be subject to prosecution. Upon information and belief, there is no Tennessee criminal statute which prohibits alteration or tampering with the radio or digital video recording of a private person. Accordingly, Durham's private property was afforded the protection of governmental property because Durham was both a partner with the District in this joint undertaking and a state actor.

21. The contract also required Durham to purchase and equip the Chattanooga school buses with GPS technology that "…enables staff to monitor the path and speed of a bus." Durham and the District further agreed that "District staff will be given access to this system."

22. Monitoring the path of the school bus would reveal when a bus is no longer traveling on the designated bus route, exceeding the speed limit, and driving in a reckless manner. Pursuant to the contract, both Durham and the District were responsible for monitoring the path and speed of the buses, including Bus 366.

23. The contract further provides that, "[r]ules and regulations for details incidental to the operation of bus routes, bus stops and other attendant matters shall be mutually agreed upon [by the District and Durham]."

24. As an equal partner in this joint venture, Durham worked closely with the District on a day-to-day basis. Durham had the power to veto or approve any existing or proposed rule or regulation which involved the provision of school bus services in Chattanooga, a power equal to that held by the District. Establishing, repealing and altering regulations and rules governing the provision of governmental services is a power traditionally reserved exclusively to the state.

25. The contract requires Durham to designate one person as its local representative to act as the supervisor for the operations for the District. This person shall be available during all regular working hours of school days for the purpose of handling routing, assignments, and

8

operational concerns. The supervisor shall have the authority to act in all matters covered by the policies mutually agreed to by Durham and the District and therefore is an agent of both Durham and the District.

26.     Durham, the District, and Coulter jointly participated in the constitutional wrongdoing alleged herein by conspiracy, agreement and concerted action. Each shared a common goal to violate these Plaintiffs' Constitutional rights. The conduct Defendants engaged in pursuant to this conspiracy, agreement and concerted action did in fact violate these Plaintiffs' Constitutional rights.

27.     In order to effectuate the contract's requirements, the balance of its terms make clear that Durham and the District were pervasively entwined in the state action complained of herein.

28.     Durham carried out functions historically and traditionally reserved exclusively to governmental entities.

29.     The acts complained of herein were committed by Durham and the District under color of state law and were state actions. Durham, at all times relevant to this Complaint, was a state actor.

30.     Pursuant to the terms of the contract, Durham was subject to the coercive power of the District and received such significant overt and covert encouragement from the District that the decisions of Durham were those of the District.

31.     The regulations and rules which Defendants jointly promulgated include, but are not limited to the Hamilton County Board of Education Bus Rules, and the Transportation Policy of the Hamilton County Board of Education. These rules and regulations provide, in relevant part, as follows:

a. The driver has the *authority* to assign a student a seat at any time. (Emphasis added).[1]

b. The bus driver is authorized and empowered to, "maintain[] discipline of students."

c. The bus driver is to immediately notify his or her supervisor when a student is injured on the bus.

d. School principals are responsible for putting students on and removing students from the bus each day while on their campus.

e. Bus drivers shall create a written bus-seating chart on routes where there are frequent disruptions.

f. Students riding the bus "shall" be under the supervision of the driver/assistant at all times and "shall" obey the driver/assistant at all times.

g. Bus drivers are expected to be familiar with the rules and regulations and supervisory staff are expected to enforce violations.

32.     The Transportation Policy provides that bus driver violations, such as "breaches of safety," may result in a disciplinary hearing, leading to suspension without pay or termination.

33.     Pursuant to the Transportation Policy, "[s]upervisory personnel are charged with the responsibility of seeing that all of these rules and regulations are followed." *A fortiori*, the supervisor designated by Durham is a person who acts as supervisory personnel on behalf of *both Durham and the District*. The Transportation Policy contains a section entitled

---

[1]     The process and purpose of assigned seats is covered at length within the County's school bus rules as well as within the Transportation Department Policy of the Hamilton County Board of Education. In sum, the school bus driver is authorized under color of law to detain a disruptive student and restrict that student's ability to move freely by assigning the student to a seat near the front of the bus so that the student may be more closely supervised by the driver during the route.

10

"**ROUTES**". This section requires each driver to "follow the specific route assignment without any deviations."

34.     The Transportation Policy also contains a section entitled **"SAFETY"**. This section proscribes that bus drivers "shall:"

      a.      Obey all speed limits as follows:

          i.      Rural streets not to exceed posted speed limit.

35.     In early November 2016, the Defendants had received written complaints from District employees, parents and children that Durham employee and school bus driver Johnthony Walker was recklessly endangering the safety of the young children on his route at Woodmore Elementary School.

36.     The written complaints included statements from elementary school children that:

The bus driver drives fast.  It feels like the bus is going to flip over....He makes people go seat to seat back and forth, **when someone is in the aisle he stops the bus and makes people hit their heads.**

(Emphasis added).

37.     Another written complaint that an elementary school student made to the Defendants was a heartbreaking cry for help from those with the power and duty to keep her safe:

The bus driver was doing sharp turns and he made me fly over to the next seat.
We need seat belts.

38.     Woodmore Elementary School Principal Brenda Adamson-Cothran, after receiving the documented complaints of school employees and students about Johnthony Walker's driving, notified the District, Coulter and Durham on several occasions that Walker was driving recklessly with students on board, injuring students intentionally and driving dangerously fast when leaving Woodmore Elementary.

39.     Neither Coulter, Durham nor the District took action to stop the dangerous behavior and continued to instruct the students to board the school bus each day with the actual knowledge that they were being placed in immediate danger.

40.     Moreover, despite Defendants' policy requiring the installation and use of an electronically monitored system to track both the path and speed of their school buses, and to monitor video-camera recordings from inside the school buses, the District and Durham, by agreement, conspiracy and concerted action did not monitor or discipline Johnthony Walker.

41.     Coulter, the District and Durham had actual prior knowledge that Walker was driving recklessly and that the students on his bus were being violently tossed about the bus. However, by agreement, conspiracy and concerted action, none of them took action to discipline Walker or protect the Plaintiffs.

42.     The Transportation Policy also contains a section entitled **"STUDENT INJURY."** This section explicitly instructs that, "[i]n the event a student is injured while on the school bus, it is the driver's responsibility to notify the supervisor immediately."

43.     Coulter, the District and Durham had actual prior knowledge that Walker's reckless driving had caused injury to the students on his bus which Walker had not reported.

44.     Consistent with the pattern and practice of the Defendants, they did nothing to enforce their mutually established regulations which required Johnthony Walker to immediately report the injuries sustained by students when they were violently thrown from seat to seat and were slammed into the seats in front of them—injuries caused by Johnthony Walker's reckless and malicious driving.

12

45.    The Defendants had actual prior knowledge that Johnthony Walker was using the school bus as a weapon to recklessly and sadistically inflict pain on the elementary school children riding his bus.

46.    The Defendants were charged with knowledge of the regulations, rules and policies that governed the transportation of the young children of Woodmore Elementary School.

47.    The Defendants instructed the young children to leave the safety of their elementary school and board the school bus operated by Johnthony Walker throughout the month of November 2016.

48.    Defendant Coulter implicitly authorized, approved, and/or knowingly acquiesced to the unconstitutional behavior of Johnthony Walker, Durham, and Principal Adamson-Cothran. Defendant Durham implicitly authorized, approved, and/or knowingly acquiesced to the unconstitutional behavior of Johnthony Walker.

49.    Among the rules and regulations that Durham and the District established, within Transportation Policy of the Hamilton County Board of Education there appears, under the heading **"SECOND JOBS"**, the following warning: It is "dangerous for bus drivers to work a complete shift and/or have less than six hours sleep prior to running a route."

50.    As early as November 2, 2016, a school official, Carlis Shackleford, documented his chilling interaction with Johnthony Walker after Mr. Shackleford boarded the bus in response to student complaints.  Mr. Shackleford wrote:

> The driver was visibly upset and **continued on by saying that he had another job and driving this bus was just a part time job for him.**
> ...
> Driver stated that he could just leave [a student] at the school.  He then stated 'or I can just leave the student on the bus and I will get off the bus and leave the school.'
> ...

Driver stated **that he did not care about the students and proceeded to tell the students he did not care about them.**
(Emphasis added.)

51. The Defendants had actual notice of these complaints inasmuch as Defendant Benjamin Coulter, the Supervisor of Transportation for the Hamilton County School District, responded to Mr. Shackleford's chilling account with a cursory statement that "we are addressing the issue with the driver."

52. Consistent with the pattern and practice of the Defendants, they did nothing to enforce their mutually established regulations regarding the danger of a school bus driver working a second job despite actual knowledge of Mr. Walker doing so, and were deliberately indifferent to the safety of the elementary school children on his bus.

53. The Transportation Policy includes a section entitled "SAFETY," which imparts the clear instruction to bus drivers:

**STOP! CHECK YOUR BUS FOR SLEEPING CHILDREN BEFORE YOU EXIT YOUR MORNING RUN AND YOUR AFTERNOON RUN.**

(Emphasis in original).

54. Consistent with Defendants' pattern and practice, they did nothing to enforce their mutually established regulations regarding the known threat posed by Johnthony Walker leaving children on his bus, and were deliberately indifferent to the rights and safety of the elementary school children on his bus.

55. Pursuant to the Defendants' mutually established rules and regulations, the school principal, at the direction of Coulter and the District, is "responsible for the safe loading/unloading of buses while on their campus."

56. Pursuant to the Defendants' mutually established rules and regulations, the school principal "shall" report complaints from bus drivers regarding students within 24 hours, to

14

preclude a problem from "getting worse." The Principal reported her observations, concerns, and complaints to Coulter.

57. Despite the Defendants' mutually established rules and regulations, the Defendants ignored the complaints of the principal, driver, parents, and students and continued to direct the principal of Woodmore Elementary School to instruct her young students to leave the safety of the school campus and board a school bus operated by Johnthony Walker, who was, by virtue of the mutually established regulations, rules, and policies, in charge of maintaining discipline on the bus.

58. Durham and the District, despite their mutually established regulations, rules and policies, ignored Johnthony Walker's repeated and flagrant violations of same, thereby placing the Plaintiffs in imminent danger and subjecting them to repeated acts of physical and mental brutality by Johnthony Walker.

59. As a result of their aforementioned acts and omissions, the District subjected the elementary school children of Bus 366 to Johnthony Walker's repeated and sadistic infliction of bodily harm, including the fear of death, to control the behavior of his passengers.

60. Durham subjected the elementary school children of Bus 366 to Johnthony Walker's repeated and sadistic use of bodily harm, including the fear of death, to control the behavior of his passengers, by entrusting Bus 366, and its associated route to and from Woodmore Elementary School, to Walker every day, including November 21, 2016, and then requiring him to run that route.

61. Durham and the District's approval of and deliberate indifference towards Johnthony Walker's repeated and sadistic use of bodily harm, including the fear of death, to control the behavior of elementary school children and their continuous instruction to the young

children to board Walker's bus each day directly caused injury to the Plaintiffs, including severed limbs, head and spinal cord injuries, severe emotional trauma and, for six small children, death.

62.     There was no pedagogical justification for Defendants' repeated and sadistic use of bodily harm, including the fear of death, to control the behavior of elementary school children.

63.     The force used by the Defendants, including slamming small children's heads into their seats, swerving the bus to make the children fall out of their seats and employing threats of death and imminent bodily harm, was grossly excessive and resulted in Plaintiffs' serious injuries, which include death, severed limbs, severe head and spinal injury, and severe emotional trauma. The excessive nature of the Defendants' force shocks the conscious.

64.     The force used by Defendants, including slamming small children's heads into their seats, swerving the bus to make the children fall out of their seats, and employing threats of death and imminent bodily harm was malicious, sadistic and done for the sole purpose of causing harm.

65.     Upon information and belief, Johnthony Walker was placed on Bus 366 by Durham and the District as punishment after being removed from another bus route in Hamilton County.

66.     Upon information and belief, Bus 366 was known to be a difficult route because of the large number of young children on the bus and the need for constant supervision and discipline by the bus driver.

67.     Johnthony Walker submitted the names of more than 10 students who rode the bus whom he believed were not responding to his sadistic methods of restoring discipline and requested that the Defendants place an assistant on the bus.

16

68. Defendants not only ignored Walker's request, but Coulter, on behalf of the District and Durham, **admonished Walker to stop referring so many students for discipline.**

69. By agreement, conspiracy and concerted action, the Defendants ignored Walker's requests for assistance, ignored his sadistic methods of discipline and his reckless and dangerous operation of the bus, and were deliberately indifferent to the abuse of Plaintiffs' Constitutional rights.

## The November 21, 2016 Bus Crash

70. On November 21, 2016, the Defendants instructed the children, including Plaintiff, to board Johnthony Walker's bus after afternoon dismissal. Prior to boarding Walker's bus, the children were otherwise in no imminent danger.

71. Johnthony Walker, with the agreement of Durham, the District and Coulter, continued his sadistic method of discipline on the school bus.

72. As had become the custom, practice and policy of Durham and the District, despite actual prior knowledge that Walker was speeding and driving recklessly, no one was monitoring the route or speed of Johnthony Walker's bus. The bus was not on the mandatory route and was being operated by Walker in a reckless manner and at a high rate of speed.

73. Upon information and belief, Johnthony Walker, continuing in the discipline agreed to by Durham, the District and Coulter, began to swerve violently in an attempt to inflict pain upon the young children who were on their way home for Thanksgiving break.

74. Upon information and belief, immediately prior to losing control of the bus, Walker yelled at the young children, "Are ya'll ready to die?"

17

75.     The bus swerved violently from the right side of the roadway to the left. It left the roadway at such a high rate of speed that the bus sheared a telephone pole at its base and slammed violently into a large tree.

76.     The impact severed the roof of the school bus and decapitated one young child. Ultimately six elementary school children died from their injuries. Several others were hospitalized in intensive care for severed limbs, spinal injuries and/or head trauma while many other young children were treated at the emergency room for broken bones, lacerations and/or shock.

77.     First responders reported that the scene was horrific. Within the twisted wreckage, children as young as 6 were covered in their own blood and the blood of their classmates and siblings. Some small children were too young to even tell the first responders their names and telephone numbers.

78.     Some children escaped from the carnage, only to re-enter the bus in an attempt to help their classmates escape.

79.     Plaintiff M.S., also a passenger on Bus 366 at the time of the crash, suffered numerous and severe physical, emotional, and psychological injuries. He sustained a concussion and contusion and other injuries that required the use of crutches. M.S. witnessed firsthand the deaths and injuries suffered by his fellow classmates. In fact, this ten year old boy attempted to—and did—pull several of his fellow classmates from the wreckage. When he went back to the bus to assist his girlfriend, he found that she had been crushed in the crash and he could not pull her free. She later died. As a result, M.S. has anxiety, depression, and nightmares, and is scared to get on a bus.

18

80. Plaintiffs Sharonda Covington and Derek Stepp, M.S.'s parents, experienced significant psychological trauma, emotional trauma, and pain and suffering as a result of the November 21st crash and M.S.'s resulting injuries. They also incurred medical expenses and lost wages.

81. The scene was so horrific that many of the first responders required treatment for emotional trauma after extricating the mangled bodies of children from the twisted wreckage.

82. The Plaintiffs endured sadistic and methodical treatment at the hands of the Defendants. That treatment culminated in death, dismemberment, severe physical injury and severe psychological trauma.

83. Only after this horrific tragedy did the District, Coulter and Durham elect to (a) place a District employee on all morning and afternoon bus routes at Woodmore Elementary and (b) establish a complaint management system that will purportedly monitor complaints of school bus driver misconduct. These measures illustrate the degree of control that each Defendant exercised prior to November 21, 2016. However, these modifications of Defendants' standard operating procedures are temporary, have not been adopted into the Defendants' contract or rules and regulations, do not have the force of law, and may be rescinded at any time.

84. It thus remains likely that Plaintiffs will suffer substantial and irreparable injury as a result of the Defendants' aforementioned acts and omissions, and that Plaintiffs' likely prospective injuries can only be adequately remedied with equitable relief.

## CLASS ALLEGATIONS

85. This action is brought by the named Plaintiffs on their own behalf and on behalf of all others similarly situated, as a class action pursuant to Fed.R.Civ.P. 23. Plaintiffs seek to represent a class defined as follows: the children who were passengers on Woodmore

19

Elementary School Bus 366 during the afternoon route on November 21, 2016, and their respective parents/guardians and/or estates.

86.     Thirty-seven children were on Bus 366 when it crashed on November 21, 2016. Including these children's parents and/or guardians and/or estates, there are approximately one hundred Class Members. As such, the Class is sufficiently numerous as to render a class action lawsuit most convenient, practical, and judicially efficient for all parties. The Class is ascertainable because it is composed of specific children who were passengers on Bus 366, on November 21, 2016, on the afternoon route, and their respective parents/guardians and/or estates. Defendants should be able to identify all of the Class Members at this time.

87.     There are numerous questions of law and fact raised in this Complaint that are common to all Plaintiffs and affect the rights of each Class Member. Defendants engaged in a common course of wrongful conduct that proximately caused the Class Members' injuries. Common questions include whether Defendants are state actors under 42 U.S.C. § 1983; whether Defendants violated the Constitutional rights of the Class Members; whether Defendants' violation of the Class Members' Constitutional rights, or any other acts and/or omissions, caused the Class Members' injuries; whether and what form of prospective relief is appropriate; and whether a preliminary injunction is warranted. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

88.     The claims within this Complaint for violations of the Plaintiffs' Constitutional rights, pursuant to 42 U.S.C. § 1983, are not subject to the Tennessee Government Tort Liability Act, nor are they subject to Tennessee's statute limiting awards for non-economic injuries. In addition, Plaintiffs' claims against Coulter and Durham, in their respective individual capacities,

20

include claims for punitive damages, in that at all relevant times Coulter and Durham acted with reckless and callous indifference to Plaintiffs' Constitutional rights.

89.     The Plaintiffs-Class Representatives' claims are typical of the claims of the Class. The Plaintiffs-Class Representatives, like all Class Members, are children, or the legal guardians and/or estates of those children, who were victims of the November 21, 2016 crash of Bus 366. Defendants have acted on grounds generally applicable to all members of the proposed Class, and the injuries of both Plaintiffs-Class Representatives and the remaining Class Members are the result of a discrete vehicle crash that occurred at a specific point in time.

90.     The Plaintiffs-Class Representatives will fairly and adequately protect the interests of all Class Members and pursue the action on behalf of the Class.

91.     Undersigned Counsel are unaware of any conflicts between the Plaintiffs-Class Representatives and any other Class Member with respect to the claims, allegations, and relief sought in this Complaint.

92.     Undersigned Counsel have investigated all claims, allegations, and relief sought in this Complaint, have committed the appropriate resources to represent this Class, and are competent and experienced in class action and mass tort complex litigation.

93.     Class certification is appropriate because this Court can designate particular claims or issues for classwide treatment and may designate subclasses pursuant to Fed.R.Civ.P. 23(c)(4). Certification of an issues class under Rule 23(c)(4) will permit fair presentation of the Class Members' claims and will advance the disposition of the litigation as a whole.

94.     Class certification is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Defendants have acted and/or refused to act on grounds that are generally applicable to the class

and which violate the Constitutional rights of the minor Class Members.   Accordingly, prospective and injunctive relief is appropriate as to the class as a whole.

95.     The prerequisites of Fed.R.Civ.P. 23(b)(3) are also satisfied.   The questions of law and fact regarding Defendants' liability for the November 21, 2016 crash of Bus 366, including whether and how Defendants violated the Class Members' Constitutional rights and whether Defendants' acts and/or omissions caused the crash and the Class Members' resulting injuries, are common to the Class Members and predominate over questions which may affect only individual members.

96.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.   Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure.

97.     The prosecution of separate claims by individual Class Members creates a risk that adjudication concerning individual members of the classes would, as a practical matter, be dispositive of, or substantially impair or impede, the ability of other Class Members not parties to these actions to protect their interests.

**Count I**
**Deprivation of a Constitutional Right—42 U.S.C. § 1983**
**Breach of Duty to Protect Against State-Created Danger**
**All Plaintiffs Against All Defendants**

98.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

99.     At all times relevant hereto, M.S. a young elementary school child, was in the Defendants' custody and under the Defendants' exclusive control while traveling on Bus 366.

100.     At all times relevant hereto, Defendants acted under color of law.

101.     Defendants, under color of law, were expressly responsible for protecting the health, safety and welfare of Plaintiffs from a danger created by the Defendants to which they then exposed the Plaintiffs. Defendants, in abrogation of this special duty, knowingly, recklessly and callously exposed the Plaintiffs to sadistic punishment which caused Plaintiffs' deaths, grievous bodily harm and psychological trauma.

102.     Defendants created the special danger to which they then exposed the Plaintiffs by their approval of, and agreement, conspiracy and concerted action to permit to continue, Johnthony Walker's brand of "discipline."

103.     The Defendants affirmatively instructed the Plaintiffs to board Bus 366 each day despite actual prior notice that the children on the bus were being subjected to sadistic physical and mental acts that had previously caused them injury.

104.     Prior to being instructed and required to board Bus 366, the Plaintiffs were not in imminent danger.

105.     Defendants' actions placed Plaintiffs in continuous and ongoing danger by instructing the Plaintiffs, elementary school children, to board Bus 366 each day.

106.     Once the Plaintiffs boarded Bus 366 they were subjected to sadistic physical and mental acts performed by Johnthony Walker with the agreement of the Defendants.

107.     The Plaintiffs faced special danger on Bus 366 because the sadistic acts were specifically targeted at and visited upon the occupants of the school bus, not the general public at large.

108.    The Defendants' actions placed the Plaintiffs in special danger of death and serious injury and their injuries were proximately caused as a result of the danger.

109.    The Defendants' actions created the special danger that the Plaintiffs would suffer death or serious physical injury as a result of Johnthony Walker's actions inasmuch as none of the Minor Plaintiffs would have been subject to Walker's sadistic brand of discipline had they not boarded Bus 366 at the Defendants' direction and instruction.

110.    Because the Defendants' actions created the special danger to which the Plaintiffs were then required to be exposed, the Defendants had a duty to protect the Plaintiffs.

111.    Plaintiffs were further denied substantive due process of law as alleged *supra* and *infra*, and suffered the injuries complained of herein.

112.    As a result, Plaintiffs were deprived of their property, personal health and life by the inherently dangerous activity of the Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in a sum within the jurisdictional limits of this Court, together with the costs of suit, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, and such further relief as the Court deems proper.

### Count II
### Deprivation of a Constitutional Right—42 U.S.C. § 1983
### Violation of Right to Bodily Integrity—U.S. Const. Amend. XIV
### All Plaintiffs Against All Defendants

113.    Plaintiffs incorporate and adopt by reference each ·allegation set forth in each preceding and subsequent paragraph, as if fully restated herein.

114.    The Fourteenth Amendment to the U.S. Constitution protects Plaintiffs' right to be free from physical abuse at the hands of state actors and the right to personal security and bodily integrity.

24

115.    Defendants violated Plaintiffs' rights to personal security and bodily integrity when they countenanced and approved Johnthony Walker's continuous use of sadistic and malicious force on Bus 366, including driving recklessly and at high speeds, deliberately slamming on the brakes to force children into the seats in front of them, driving off of the approved route, and swerving on the road.

116.    Defendants were recklessly, callously, and deliberately indifferent to Plaintiffs' Constitutional rights when they intentionally disregarded Johnthony Walker's clear and persistent pattern of abuse of the students on Bus 366.

117.    Defendants, by agreement, conspiracy, and concerted action, tacitly approved Walker's unconstitutional conduct by failing to act, amounting to an official policy of inaction. Defendants had ample actual prior and constructive notice of Walker's continuing pattern of abuse and unconstitutional behavior.

118.    Defendants' policy of inaction proximately caused Plaintiffs serious injury, including severed limbs, head and spinal cord injuries, and death.

119.    Defendant Coulter implicitly authorized, approved, and/or knowingly acquiesced to the unconstitutional behavior of Johnthony Walker, Durham, and Principal Adamson-Cothran. Defendant Durham implicitly authorized, approved, and/or knowingly acquiesced to the unconstitutional behavior of Johnthony Walker.    These acts proximately caused Plaintiffs' injuries.

120.    The Defendants affirmatively instructed the Plaintiffs to board Bus 366 each day, including the afternoon of November 21, 2016, despite actual prior notice that the children on the bus were being subjected to sadistic physical and mental acts. Those affirmative acts proximately caused Plaintiffs' injuries.

121. Each day, including the afternoon of November 21, 2016, Durham provided Johnthony Walker with the keys to Bus 366, entrusted the bus and the route from Woodmore Elementary to him, and required him to run the route. These affirmative acts proximately caused Plaintiffs' injuries.

122. Defendants, as state actors, maliciously, intentionally, brutally, and inhumanely injured Plaintiffs, thereby abusing their official power and shocking the conscious.

123. There was no pedagogical justification for Defendants' use of force—it was exerted solely for sadistic and malicious purposes. Even had such a pedagogical justification existed, Defendants' use of force was unconstitutionally excessive.

124. The Defendants, by agreement, conspiracy, and concerted action, provided inadequate training to and/or failed to train Johnthony Walker regarding safe and appropriate methods of school bus operation and student discipline, reporting and handling of safety complaints regarding school bus operators and the rights of school children to be free from sadistic punishment that causes death and severe physical injury.

125. Johnthony Walker was too young to rent a car in Tennessee. He was inexperienced and, in addition to his previous traffic offenses, previously had caused a vehicle accident *while driving a Durham school bus.*

126. The Defendants, by agreement, conspiracy, and concerted action, did not establish and adequate training system despite the fact that they had actual knowledge of Walkers' actions. Their inaction was by agreement, conspiracy, and concerted action, and with deliberate indifference to the ongoing violations of Plaintiffs' rights.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in a sum within the jurisdictional limits of this Court, together with the costs of suit, punitive

damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, and such further relief as the Court deems proper.

## Count III
### Conspiracy to Deprive of Constitutional Right—42 U.S.C. § 1985
### All Plaintiffs Against All Defendants

127.    Plaintiffs incorporate and adopt by reference each allegation set forth in each preceding and subsequent paragraph, as if fully restated herein.

128.    As alleged, *supra,* the Defendants, acting under color of law, combined, conspired and confederated to violate Plaintiffs' Constitutional rights by the acts alleged herein.    The Defendants' knowing, concerted, and malicious actions led to the deprivation of Plaintiffs' rights, as identified herein.

129.    As described *supra* and *infra,* Plaintiffs were and continue to be severely and irreparably damaged both physically and psychologically.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in a sum within the jurisdictional limits of this Court, together with the costs of suit, punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, injunctive relief, and such further relief as the Court deems proper.

## Count IV
### Negligence and Gross Negligence
### All Plaintiffs Against Defendant Durham

130.    Plaintiffs incorporate and adopt by reference each allegation set forth in each preceding and subsequent paragraph, as if fully restated herein.

131.    At all relevant times, Johnthony Walker was an agent, servant, and/or employee of Defendant Durham, and Walker acted within the scope of that agency.    Durham owed the highest degree of care to the children on Bus 366.

27

132.    At the time of the crash, Bus 366 was operated by Johnthony Walker and registered with the State of Tennessee to Durham. Accordingly, and pursuant to Tenn. Code Ann. § 55-10-312, the vehicle was being operated for the use and benefit of Durham. Therefore, the negligence of Johnthony Walker is imputed to Durham and Durham is liable for Plaintiffs' injuries and damages.

133.    Pursuant to Tenn. Code Ann. §50-11-311, the bus was being operated by Johnthony Walker with the authority, consent and knowledge of the owners and for the use and benefit of the owner. Therefore, the knowledge and negligence of Johnthony Walker is imputed to Durham and Durham is liable for Plaintiffs' injuries and damages.

134.    At all relevant times, including during Bus 366's afternoon route on November 21, 2016, Johnthony Walker was operating the bus in a negligent and careless fashion and caused the crash which resulted in Plaintiffs' injuries.    Johnthony Walker's actions breached the applicable duty of care as set forth within multiple Common Law Acts of Negligence, to-wit, Johnthony Walker:

    a.   Was not driving the bus as an ordinary and prudent person would have done under the conditions and circumstances;

    b.   Was not keeping a proper lookout ahead in the direction in which the bus was traveling;

    c.   Was not exercising caution;

    d.   Failed to keep his vehicle under due and reasonable control;

    e.   Failed to devote full time and attention to the operation of a vehicle;

    f.   Failed to pay attention to the road;

    g.   Failed to drive on the right side of the road;

28

h. Failed to drive on the roadway;

i. Was operating the vehicle in excess of the posted speed limit;

j. Was operating the vehicle at a speed excessive for the conditions;

k. Was driving recklessly;

l. Failed to exercise the highest degree of care to protect the children aboard; and

m. Was otherwise negligent.

135. In addition to the Common Law Acts of Negligence described above, the Plaintiffs aver that Durham and Johnthony Walker were at said time and place operating a motor vehicle in violation of certain traffic statutes of the State of Tennessee, then and there in full force and effect, to-wit:

a. Tenn. Code Ann. § 55-10-205—Reckless driving;

b. Tenn. Code Ann. § 55-8-103—Obey traffic laws;

c. Tenn. Code Ann. § 55-8-103—Operator of vehicle owned or operated by any county, town, district or political subdivision to comply with the traffic laws;

d. Tenn. Code Ann. § 55-8-109—Obey instructions of official traffic-control device;

e. Tenn. Code Ann. § 55-8-115 & § 55-8-120—Drive on right side of roadway;

f. Tenn. Code Ann. § 55-8-136—Drivers to exercise due care;

g. Tenn. Code Ann. § 55-8-152—Obey speed limit;

h. Tenn. Code Ann. § 55-8-192—Use of portable electronic device by school bus drivers;

i. Tenn. Code Ann. § 55-8-197—Driving on right side of roadway and failing to

29

exercise due care resulting in an accident resulting in serious bodily injury or death;

j.  Tenn. Code Ann. § 55-10-106—Immediate notice of accident;

k.  Tenn. Code Ann. § 55-10-101—Accidents involving death or personal injury;

l.  Tenn. Code Ann. § 55-10-102—Accidents involving damage to vehicle;

m.  Tenn. Code Ann. § 55-10-103—Duty to give information and render aid; and

n.  Tenn. Code Ann. § 55-10-202—Owner or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly permit the operation of the vehicle in any manner contrary to law.

136.    In addition to the acts and omissions of Durham and Durham's agents, employees, servants, and contractors, Durham directly breached its duties to the Plaintiffs including, but not limited to, the following, with each and every one constituting a direct and proximate cause of the November 21, 2016 crash and Plaintiffs' injuries:

a.  Failure to have policies and procedures in place to ensure that all school bus drivers were properly hired, trained, supervised, investigated and disciplined;

b.  Failure to properly hire, train, supervise, investigate and discipline school bus drivers, including Johnthony Walker; and

c.  Failure to use that degree of skill and care required of a student transportation company owing the highest degree of care under the circumstances then and there existing.

137.    Durham breached its duties to Plaintiffs maliciously, recklessly, and callously, exhibiting utter unconcern for the safety of Plaintiffs, and a callous indifference to the lives of the Plaintiffs and to the consequences of their acts and omissions.

138. As a result of the November 21, 2016 crash, proximately caused by Durham's negligence and gross negligence, Plaintiffs sustained personal injuries, including death and severe physical injuries and mental suffering; have incurred and will incur considerable medical and other expenses as a result of the Durham's negligence; and have been deprived of the enjoyment of life. Plaintiffs' injuries are permanent.

WHEREFORE, Plaintiffs demand judgment against Durham in a sum within the jurisdictional limits of this Court, together with the costs of suit, punitive damages, and such further relief as the Court deems proper.

### Count V
### Assault and Battery
### All Plaintiffs Against All Defendants

139. Plaintiffs incorporate and adopt by reference each allegation set forth in each preceding and subsequent paragraph, as if fully restated herein.

140. At all relevant times, Johnthony Walker was an agent of Durham and the District.

141. At all relevant times, Durham and the District owed the highest degree of care to the passengers on Bus 366.

142. Durham, the District and Coulter had actual prior notice of and permitted, authorized, approved, and/or knowingly acquiesced to Johnthony Walker's continued reckless driving and sadistic treatment of the children on Bus 366, which was intended to, and did, place Plaintiff Children in imminent fear of bodily harm and death.

143. Durham, the District and Coulter had actual prior notice of, and permitted, authorized, approved, and/or knowingly acquiesced to, Johnthony Walker's reckless driving and sadistic treatment of the children on Bus 366, which caused physical injury to the children on

Bus 366. Plaintiff Children did not consent to these acts and, in fact, were incapable of consenting to such.

144. Durham, the District and Coulter refused to take reasonable precautions to protect the Plaintiff Children from the foreseeable risk that the Plaintiff Children would continue to be battered and assaulted by Johnthony Walker.

145. Durham, the District and Coulter condoned Johnthony Walker's reckless driving and sadistic treatment of the children on the school bus, which caused both imminent fear of bodily injury or death and actual physical injury and death.

146. Durham, the District, and Coulter are not immune from suit for the assault and battery committed by Johnthony Walker inasmuch as neither tort is an enumerated intentional tort within the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205, *et seq.*

147. Coulter's course of conduct violated multiple regulations, rules and policies regarding Johnthony Walker's operation of the bus and was not a discretionary function.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in a sum within the jurisdictional limits of this Court, together with the costs of suit, punitive damages, and such further relief as the Court deems proper.

Dated: December 22, 2016

Respectfully submitted,

BERKE, BERKE & BERKE

By: /s/ Ronald J. Berke
Ronald J. Berke,      BPR#1741
A. Emma Flynn,    BPR#32582
420 Frazier Avenue
Chattanooga, TN 37405
Telephone (423) 266-5171
Facsimile: (423) 265-5307
Email: ronnie@berkeattys.com

William H. Murphy, Jr. *(application forthcoming)*
William H. Murphy, III *(application forthcoming)*
Nicholas A. Szokoly *(application forthcoming)*
Jason G. Downs *(application forthcoming)*
Jessica H. Meeder *(application forthcoming)*
**Murphy, Falcon & Murphy, PA**
One South Street, 23rd Floor
Baltimore, MD 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: nick.szokoly@murphyfalcon.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on the issues set forth in this Amended Complaint.


Dated: December 22, 2016

Respectfully submitted,

BERKE, BERKE & BERKE

By: /s/ Ronald J. Berke
Ronald J. Berke,      BPR#1741
A. Emma Flynn,    BPR#32582
420 Frazier Avenue
Chattanooga, TN 37405
Telephone (423) 266-5171
Facsimile: (423) 265-5307
Email: ronnie@berkeattys.com

William H. Murphy, Jr. *(application forthcoming)*
William H. Murphy, III *(application forthcoming)*
Nicholas A. Szokoly *(application forthcoming)*
Jason G. Downs *(application forthcoming)*
Jessica H. Meeder *(application forthcoming)*
**Murphy, Falcon & Murphy, PA**
One South Street, 23rd Floor
Baltimore, MD 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
Email: nick.szokoly@murphyfalcon.com

*Attorneys for Plaintiffs*