UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA


| | |
|---|---|
| M.S. (a minor, by his parent and next friend, Sharonda Covington), *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>HAMILTON COUNTY DEPARTMENT OF EDUCATION, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 1:16-CV-501<br>)<br>)<br>)<br>)<br>) |

<u>MEMORANDUM OPINION AND ORDER</u>

   This matter is before the Court on the defendants' motions to dismiss this § 1983 action in its entirety for failure to state a claim under Rule 12(b)(6).  Defendant Durham School Services, L.P. ("Durham") moves to dismiss the amended complaint.  [Doc. 21].  Defendants Hamilton County Department of Education ("HCDE") and Benjamin Coulter ("Coulter") similarly move to dismiss the amended complaint.  [Doc. 24].  The plaintiffs filed a consolidated response to both motions, [Doc. 40], to which Durham replied, [Doc. 42], and HCDE and Coulter replied, [Doc. 44].  The matters are ripe for review.

## I.  FACTS

   The facts of this case arise out of an indisputably tragic school bus accident that occurred on November 21, 2016.  On the afternoon of November 2, 2016, Johnthony Walker ("Walker") was driving Bus 366 on his after-school bus route when he struck a telephone pole, flipped the bus on its side, and hit a tree.  The plaintiffs allege that Walker was speeding on a narrow, curvy residential road when the accident occurred.  On board the bus were 37 children from Woodmore

1

Elementary School, located in Chattanooga, Tennessee. As a result of the accident, six of the children died, another six were treated in the intensive care unit, and many others were treated for various, less-severe injuries.

Defendant Durham is a student services transportation company that contracted with the HCDE to provide school bus transportation services at Woodmore Elementary School, among others. Walker was employed by Durham as a bus driver and was not named as a defendant in this litigation. Defendant Coulter was the Supervisor of Transportation for HCDE at the time of this accident.

The plaintiffs allege that the transportation contract created a "joint undertaking" between Durham and the HCDE to ensure that students were transported to and from school on school busses. As evidence of this "joint undertaking," the plaintiffs allege that the contract required Durham to purchase and equip the school busses with recording equipment and submits that anyone who destroyed the equipment or digital records could be subjected to prosecution. [*Amended Complaint*, Doc. 3 ¶ 20]. The plaintiffs submit "upon information and belief" that no Tennessee statute prohibits the tampering with of the digital recording of a private person, and therefore, "Durham's private property was afforded the protection of governmental property", thereby making Durham a state actor. [*Id.*]. Further, HCDE had access to review the video recordings and GPS monitoring systems installed on the busses. [*Id.* ¶¶ 21-22]. The contract provided that changes to the rules or regulations had to be "mutually agreed upon." [*Id.* ¶ 23].

The plaintiffs note in their complaint many of the safety rules in HCDE's transportation policy require drivers to adhere to traffic laws and other regulations to promote safety. [*Id.* ¶¶ 33-34]. The plaintiffs allege that the defendants were aware that Walker was violating the HCDE

transportation policy by failing to adhere to traffic laws, [*Id.*], not caring about the students, [*Id.* ¶ 50], and saying that driving the bus was merely a part time job. [*Id.*].

The plaintiffs further allege that "in early November 2016," the defendants received written complaints from students, parents, and Woodmore school employees that Walker was "recklessly endangering the safety of the young children on his route" by braking suddenly, taking sharp turns, driving dangerously fast, and intentionally attempting to injure students. [*Id.* ¶¶ 35-38]. Coulter was aware of some of these concerns and the principal of Woodmore's concerns regarding Walker's driving and behavior. [*Id.* ¶55]. "Upon information and belief," Walker was assigned to Bus 366 "as punishment;" however, the plaintiffs have not alleged who made this assignment. [*Id.* ¶ 65].

The plaintiffs allege that the defendants' "approval of a deliberate indifference towards Johnthony Walker's repeated and sadistic use of bodily harm . . . to control the behavior of elementary school children and [the defendants'] continuous instruction to the young children to board Walker's bus each day caused injury to the Plaintiffs," including bodily injury that occurred following the November 21, 2016 accident. [*Id.* ¶ 61].

The plaintiffs bring this class action on behalf of M.S., a minor on Bus 366 who survived the crash, and others similarly situated, namely, "the children who were passengers on Woodmore Elementary School Bus 366 during the afternoon route on November 21, 2016, and their respective parents/guardians and/or estates." [*Id.* ¶ 85]. The plaintiffs allege five causes of action of both state and federal claims. The plaintiffs have brought some claims pursuant to 41 United States Code § 1983 ("§ 1983") as well as state common law tort claims. Count One alleges a § 1983 action against all defendants based on a "breach of duty to protect against state-created danger." Count Two alleges a § 1983 action against all defendants based on a constitutional right to bodily

integrity, applicable to the states through the Fourteenth Amendment. [*Id.* ¶ 114]. Count Three alleges § 1985[1] claim based on a conspiracy to deprive the plaintiffs of the same constitutional right. Counts Four alleges Tennessee common law tort claims of negligence and gross negligence. [*Id.* ¶ 138]. Count Five alleges Tennessee common law tort claims of assault and battery. [*Id.* ¶ 146].

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." I*d*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[1] The Amended Complaint cites 42 U.S.C. § 1985 as the statutory basis for this claim. However, in their consolidated response, the plaintiffs state this is a typographical error and they intended to cite § 1983.

for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  Moreover, this Court need not "'accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 556 U.S. at 678.  Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits.  *Amini v.  Oberlin College*, 259 F.3d 493, 502 (6th Cir.  2001).

Generally, under Rule 12(d), if matters outside of the pleadings are presented and not excluded by the court, a motion to dismiss should be treated as a motion for summary judgment and disposed of as provided for in Rule 56.  Fed. R. Civ. P. 12(d).  However, the Court may consider a document attached the motion pleadings even if not incorporated by reference or attached to the complaint under certain circumstances.  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).  Where a document is referred to in the complaint and is central to the plaintiff's claim but not attached or incorporated by reference in the complaint, the defendant may submit the document to be considered with the motion to dismiss and such consideration does not convert the motion to dismiss to a motion for summary judgment.  *Id.* (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).  Here, the plaintiff's complaint contains an entire subsection titled "The July 1, 2013 Contract Between the District and Durham."  [*Amended Complaint*, Doc. 3 at 6].  In this subsection, the plaintiff specifically cites to the contract but the contract was not attached or incorporated by reference in the complaint.  The contract was attached to Durham and HCDE's motions to dismiss and will be considered by the Court in this motion to dismiss.  Because the contract is specifically referenced in the plaintiff's complaint, indeed quotations directly from the complaint are alleged, and the contract terms form the basis of holding Durham liable, the consideration of this contract does not convert these motions to motions for summary judgment.

### III. ANALYSIS

Counts One, Two, and Three allege causes of action pursuant to § 1983. Section 1983 provides a cause of action where a person acting under the color of state law deprived the plaintiff of a constitutional right. 42 U.S.C. § 1983. To sustain a motion to dismiss pursuant to Rule 12(b)(b), the plaintiff must sufficiently allege two elements, (1) that there was a deprivation of a constitutional right, and (2) that the deprivation was caused by a person acting under the color of state law. *Wittstock v. Mark A. Van Sile, Inc.*, 330F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). In limited situations, a private actor may be considered a state actor under § 1983. *Id.*

#### A. Durham as a State Actor

Durham moves to dismiss Counts One, Two, and Three alleging § 1983 violations because Durham is a private actor, not a state-actor, and therefore cannot be liable under § 1983. The principal inquiry in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment is whether the actions may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1332 (6th Cir. 1992) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The Sixth Circuit applies three tests to determine whether a private actor's conduct may be attributable to the state: (1) the nexus or symbiotic relationship test; (2) the public function test; and (3) the state compulsion test. *Id.* (citing *Lugar*, 457 U.S. at 939). The Sixth Circuit has also discussed another test, the entwinement test. *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). In its motion to dismiss, Durham argues that the plaintiff has failed to allege any facts that meet any of the three tests. However, in their response, the plaintiffs argue they have plausibly alleged facts to support a claim under the nexus test, the state compulsion test, and the entwinement test. [Doc. 41 at 7]. The plaintiffs argue that the nexus, symbiotic

relationship, and the entwinement tests are similar enough that they may be analyzed collectively. [*Id.*]. Because the plaintiffs do not argue that they have sufficiently alleged a relationship under the public function test, that test will not be considered as a basis for recovery or discussed in this memorandum opinion.

### i) State Compulsion Test

The state compulsion test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. This requires more than mere approval or acquiescence of the private party's conduct. *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). This test requires "proof that the state significantly encouraged or somehow coerced" the private actor to take a particular action "so that the choice is really that of the state." *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). The Supreme Court further held that although a school was subject to "extensive regulation," the allegedly unlawful discharge of the plaintiff was "not compelled or even influenced by any state regulation." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982)

According to Durham, the plaintiffs have alleged that Durham deprived the plaintiffs of their constitutional right by failing to properly hire and train Walker and for failing to act on prior complaints of Walker's driving. [Doc. 22 at 9]. Durham argues that the plaintiffs failed to allege that the rights depriving conduct, its alleged failure to properly hire, train, and respond to complaints, were compelled or significantly encouraged by the state. [*Id.*].

The plaintiff's allegations regarding the alleged unconstitutional conduct by Durham were that the defendants "intentionally disregarded Johnthony Walker's clear and persistent pattern of abuse of the students on Buss 366," [Doc. 3 ¶ 116], "tacitly approved Walker's unconstitutional

conduct by failing to act," [*Id.* ¶ 117], "implicitly authorized, approved, and/or knowingly acquiesced to the unconstitutional behavior of Johnthony Walker," [*Id.* ¶ 119], consisting of intentionally dangerous or reckless driving. The plaintiffs further alleged that Durham "provided inadequate training to and/or failed to train Johnthony Walker regarding safe and appropriate methods of school bus operation and student discipline," [*Id.* ¶ 124], and "did not establish and (sic) adequate training system despite the fact that they had actual knowledge of Walkers' actions." [*Id.* ¶ 126].

The plaintiffs do not allege that Durham's unconstitutional conduct of failing to properly hire, train, supervise, and discipline Walker, even upon learning of his incidents of dangerous driving, was significantly encouraged or coerced by the state. The plaintiffs argue in their response brief that "Durham, at Coulter's direction and encouragement, did not discipline Mr. Walker, remove him from Bus 366, or terminate him, although it clearly had the authority to do so" in an effort to show they have alleged facts to meet the compulsion test. [Doc. 40 at 14]. However, this argument in their brief is not consistent with the allegations of their compliant discussed above. The allegations of the plaintiffs' amended complaint do not allege that Coulter directed or encouraged Durham not to take disciplinary action. Instead, the plaintiffs allege that Coulter could and should have taken disciplinary action against Walker through some alleged power of the Hamilton County transportation policy, [Doc. 3 ¶¶ 32, 41-41], and is replete with allegations that Coulter and Durham deliberately ignored the complaints. The plaintiffs have failed to allege facts that would show that Durham may be considered a state actor under the compulsion test. Nothing in the complaint alleges that the unconstitutional behavior of failing to properly hire, train, monitor, and discipline Walker was strongly encouraged or coerced by the state.

## ii. Nexus/Symbiotic Relationship and Entwinement Tests

For a private actor's conduct to meet the nexus or symbiotic relationship test, the plaintiff must show there is "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Marie*, 771 F.3d at 363 (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)). The state must be "intimately involved in the challenged private conduct" in order for the conduct to be attributable to the state. *Wolotsky*, 960 F.2d at 1335. To determine the required nexus, the state must have "insinuated itself into a position of interdependence" with the private actor. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 724-25 (1961). "Mere cooperation simply does not rise to the level of merger required for a finding of state action" under the nexus test. *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000). Importantly, this test "evaluates whether 'there is a sufficiently close nexus between the state and the *challenged action*.'" *Marie*, 771 F.3d at 363 (citing *Wilcher*, 498 F.3d at 520). The acts of private contractors are not attributable to the state merely because the private actors are performing a public contract. *Wolotsky*, 960 F.2d at 1335 (citing *Rendell-Baker*, 457 U.S. at 840-41).

The Supreme Court analyzed whether the actions of the director of a private school providing education to students experiencing difficulty completing public school due to drug, alcohol, or behavioral problems should be considered a "state-actor" for a § 1983 suit. *Rendell-Baker*, 457 U.S. at 832. The New Perspectives School was a private institution operated by a board of directors, none of whom were public officials. *Id.* The school received 90- to 99-percent of its funding from the state and federal government and had almost no students paying tuition. *Id.* Furthermore, the school funding was regulated by the state with regulations regarding matters "from record-keeping to student-teacher ratios." *Id.* at 833. Furthermore, the school was under contract with the Boston School Committee, a public committee that referred students to the school

9

pursuant to contract.  *Id.*  The contract provided reimbursement for services provided to students referred by the Boston School Committee or the Drug Rehabilitation Division of the state mental health agency.  *Id.*  This contract included "requirements concerning the services to be provided" but "except for general requirements, such as an equal employment opportunity requirement, the agreement does not cover personnel policies."  *Id.*  The Supreme Court held that the school "is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  *Id.* at 840.  Furthermore, when discussing the "symbiotic relationship" between the school and the state, the Supreme Court found that "the school's fiscal relationship with the State was not different from that of any contractors performing services for the government."  *Id.* at 843.

The entwinement test requires that the plaintiff show that Durham "is 'entwined with governmental policies or that the government is 'entwined in the private entity's management or control.'"  *Marie*, 771 F.3d at 363 (quoting *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009)).  The "crucial inquiry under the entwinement test is whether the nominally private character of the private entity is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it. "  *Id.* at 364 (internal quotations omitted).

Defendant Durham argues that the plaintiff has failed to meet the requirements of any of these tests because the plain terms of the contract between Durham and HCDE demonstrate that

Durham maintained its status as a private entity at all times. The terms of the contract provide, for example:

> [Durham], its employees, and its agents shall secure and maintain valid permits, licenses, and certifications as required by law for the operation of this agreement. [*Agreement*, Doc. 221-1 ¶ 4].

> [Durham] shall obtain insurance . . . and shall furnish certificates of insurance for each policy for liability coverage and for Workers' Compensation coverage. [*Id.* ¶ 5].

> [Durham] shall provide formal safety instruction on a regular basis for all operating personnel assigned to this Agreement. Attendance shall be required for safety meetings. [*Id.* ¶ 8].

> While engaged in carrying out and complying with the terms and conditions of this Agreement, [Durham] is an independent CONTRACTOR, and not an Officer, Agent, or Employee of the DISTRICT. Furthermore, [Durham's] officers, agents and employees shall be the officers, agents and employees of [Durham] and not of the DISTRICT. [*Id.* ¶ 9].

> [Durham] shall be solely responsible for hiring sufficient personnel to perform [Durham's] duties under this Agreement, provided however, in no event shall [Durham] employ fewer personnel than [Durham] purposed in this PROPOSAL. Such personnel shall be [Durham] employees and, in no event, shall be the employees of the DISTRICT. [Durham] shall be solely responsible for providing such personnel with appropriate supervision, training, and direction in the performance of personnel job duties. [*Id.* ¶ 14].

> In the event the DISTRICT has any questions or concerns regarding the performance or any personnel employed by [Durham], [Durham] may take whatever action it deems necessary and appropriate to address the DISTRICT concern. [*Id.*].

> Prior to employing any individual in any capacity for the purpose of providing service to the DISTRICT under the terms of this AGREEMENT, [Durham] will screen each applicant, this screening to include pre-employment drug testing, criminal background checks, and any other tests, or checks required by state or federal law for individuals. [*Id.*].

As discussed above, the plaintiff's challenged action against Durham is the failure to properly hire, train, monitor, and discipline Walker. Durham argues that the clear provisions of the contract, referenced by the plaintiff, demonstrate that Durham was not pervasively intertwined in the hiring, training, or disciplining of Durham employees. Durham argues that the plaintiff has failed to allege facts or argue that its relationship with HCDE is any different from that of a contractor performing a government contract.

The plaintiff alleges in the complaint multiple times that Durham and HCDE were "equal partners" in a "joint venture" of bussing schoolchildren to and from school working closely together on a "day-to-day basis." [*Amended Complaint* ¶ 24]. The plaintiff argues in response to the motion to dismiss that there are three indications of a sufficiently close "nexus" or entwinement: "(1) the parties' equal rulemaking authority, including Durham's responsibility to enforce the regulations on behalf of the District, on a daily basis; (2) the District's control over the management, supervision and discipline of Durham's school bus drivers, including Mr. Walker; and (3) Durham and the District's joint handling of the events leading up to the November 21 crash." [Doc. 40 at 8].

Regarding the plaintiffs' first and third contentions, that HCDE and Durham have equal rulemaking authority and that they "jointly handled" a series of incidents, this argument is not persuasive to show that HCDE is sufficiently intertwined in the management and control of Durham. The contract provides that any new rules or regulations "incidental to the operation of bus routes, bus stops and other attendant matters that may arise shall be mutually agreed upon." [Doc. 22-1 ¶ 13]. Furthermore, the agreement provides that Durham will "cooperatively assist" HCDE to establish routes and schedules. [*Id.*]. The requirement to work together to establish routes and schedules for the busses and to "mutually agree" on incidental rules fail to establish that

HCDE was pervasively intertwined in the control or management of Durham. This requirement of cooperation and mutual agreement on incidental rules or changes to the scope of the contract are no different than would be necessary for any other government contractor performing a contract. Similarly, working together to address an alleged issue relating to the performance of the contract does not show any control that HCDE could exert over Durham such that Durham is essentially the state. These allegations do not show that HCDE was so involved in the management and control of Durham such that the private character of the private entity is overborne. While the contract requires HCDE to work with Durham to ensure the contract is fulfilled and performed, such cooperation does not rise to the level of pervasive entwinement.

Regarding the plaintiffs' second contention, that HCDE exercises management or supervision over Durham's drivers, including Mr. Walker, is directly contradicted by the terms of the agreement. The agreement provides Durham solely with disciplinary authority; "In the event the DISTRICT has any questions or concerns regarding the performance or any personnel employed by [Durham], [Durham] may take whatever action it deems necessary and appropriate to address the DISTRICT concern." [Doc. 22-1 ¶ 14]. The plaintiff cites often to the HCDE Transportation Policy, [Doc. 40-2], to argue that HCDE had the authority to discipline Walker. However, it appears from the contents of this policy, which was not signed as an agreement by Durham, that the policy applies to HCDE employees. The policy gives a "job description" and notes that it applies to HCDE "employees" and "personnel." [Doc. 40-2]. The agreement between Durham and HCDE states explicitly that Durham employees are not "employees" of HCDE, that HCDE does not have the authority to discipline Durham employees, and that Durham is solely responsible for providing safety training for the employees. The plaintiff has failed to state a claim pursuant to § 1983 against Durham.

**B. HCDE and Coulter Liability**

Similar to Durham, HCDE and defendant Coulter argue that Walker is not a "state actor" whose actions are attributable to HCDE or Coulter. The Court will not discuss that argument again here as the reasoning above applies equally to HCDE and Coulter's argument. HCDE and defendant Coulter further move to dismiss the amended complaint against them for failing to state a claim for relief. HCDE and Coulter argue that they cannot be held liable under § 1983 for the actions of Walker as a private actor. The plaintiffs allege that HCDE and Coulter violated their substantive due process rights by knowingly and recklessly exposing them to Walker's actions. However, as discussed above, the state is not required under the Constitution to protect citizens from the acts of private actors. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). The Constitution does not generally provide a guarantee of governmental aid or protection. *Id.* However, there are two scenarios where government actors, such as Coulter or HCDE, may be found liable for the constitutional violations of a private actor: (1) the special relationship theory; and (2) the state-created danger theory. In their consolidated response, the plaintiffs do not dispute HCDE and Coulter's argument that they have failed to sufficiently plead liability pursuant to the "special relationship" theory. Therefore, the Court will not consider this as a basis for liability or discuss it further in this opinion. However, the plaintiffs do argue they have sufficiently shown that HCDE and Coulter are liable under the state-created danger theory.

**ii. "State-Created Danger" Theory**

To establish a § 1983 claim under the state-created danger theory, the plaintiff must show the following requirements: (1) an affirmative act by the government actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person; (2) the governmental actor's act especially endangered the plaintiff or a small class of which the

plaintiff was a member; and (3) the governmental actor had the requisite degree of culpability. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)).

The Court should consider whether the plaintiffs were "safer *before* the state action than . . . *after* it." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *DeShaney*, 489 U.S. at 201). A failure to act is not an affirmative act under the state-created danger theory. *Id.* (citing *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912-13 (6th Cir. 1995)). The plaintiff must identify conduct by the state actor "which either created or increased the risk of harm" to which the plaintiff was exposed. *Koulta v. Merciez*, 477 F.3d 442, 446 (internal quotations omitted). In the Sixth Circuit, "failing to provide bus drivers with a plan for managing emergencies, taking seizure victim home without medical intervention, failing to maintain communication devices on a bus, and failing to tell the bus driver of the student's medical condition were not affirmative acts." *Cartwright*, 336 F.3d at 493 (citing *Sargi*, 70 F.3d at 912-13). Even returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm. *See Stiles ex rel. D.S. v. Grainger Cnty. Tenn.*, 819 F.3d 834, 855 (6th Cir. 2016) (citing *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003) (holding that police officers' act of returning a victim to the house where they originally found her did not increase the plaintiff's danger of being raped by the occupant of that house a second time)).

HCDE and Coulter argue that the plaintiffs have failed to sufficiently allege an affirmative act by HCDE or Coulter that either created or increased the risk that the plaintiffs would be exposed to the injurious conduct of Walker. HCDE and Coulter argue that the plaintiffs' complaint alleges the exact opposite in fact because the plaintiffs accuse HCDE and Coulter of *failing* to act in a way that would protect the students from Walker. Failing to act, intervene, discipline, or fire Walker

(even assuming that HCDE or Coulter had the authority to do so) are clearly not affirmative acts and cannot be used to establish liability under the state-created danger theory.

The plaintiff appears to argue that it alleged an affirmative act on behalf of HCDE and Coulter when it alleged that "upon information an belief, Johnthony Walker was placed on Bus 366 by Durham and the District as punishment after being removed from another bus route in Hamilton County." [*Amended Complaint* ¶ 65]. Allegations based solely "upon information and belief" are permissible only where the facts alleged are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). The Sixth Circuit has held that pleading "upon information and belief" may be permissible in certain circumstances, such as where the plaintiff may lack personal knowledge of a fact, but has "sufficient data to justify interposing an allegation on the subject" or is required to "rely on information furnished by others." *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 448 (6th Cir. 2014). Here, the plaintiffs provide no additional allegations which would lead the court to infer that HCDE employees had any authority or role in "placing" Walker on Bus 366. The entirety of the contract between Durham and HCDE provides that HCDE has no authority to hire, fire, discipline, or control Durham personnel. The Court does not find that the allegation based on information and belief that HCDE placed walked on Bus 366 should be considered here.

Plaintiffs arguably allege an affirmative act by HCDE when they state "[t]he Defendants instructed young children to leave the safety of their elementary school and board the school bus operated by Johnthny Walker the month of November 2016." [*Amended Complaint* ¶ 47]. The plaintiffs allege that HCDE employees, Woodmore school employees, instructed students to board Walker's bus at the end of the school day, thereby exposing them to increased risk of harm by

Walker.  HCDE argues this instruction neither created nor increased the students' risk of danger. The Court does not agree.  As alleged, HCDE, through its employees, instructed the children to board Walker's particular bus after school despite the fact that it knew of complaints regarding reckless or dangerous driving by Walker on that particular bus route.  The allegation states that the children were instructed to leave the safety of their elementary school and board Walker's bus wherein they were subjected to harm.  Taking the allegation as true, the schoolchildren would have remained at the elementary school and would not have been exposed to Walker's actions without such an instruction.  The Court finds that the plaintiffs have sufficiently pled an affirmative act on the part of HCDE to meet the state-created danger test.

HCDE does not contest that the second prong of the state-created danger test is met here. Therefore, the Court will assume it has been met.  The third prong of the test requires that the governmental actor have the requisite degree of culpability.  *Hunt*, 542 F.3d at 534.  In a § 1983 claim, the plaintiff must show that the governmental abuse of power that shocks the conscience. *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  In evaluating this standard, the Sixth Circuit has held that the plaintiff must show that "the state must have known or clearly should have known that its actions specifically endangered an individual.  *Kallstronm v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).  Where there is an opportunity for "reflection and unhurried judgments, a plaintiff must show that the state acted with deliberate indifference."  *Arledge v. Franklin City*, 509 F.3d 258, 263 (6th Cir. 2007).  "Deliberate indifference in the constitutional sense requires that the officials knew of facts from which they could infer a 'substantial risk of harm,' that they did infer it, and that they acted with indifference 'toward the individual's rights.'" *Range v. Douglas*, 763 F.3d 573, 591 (6th Cir. 2014) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002)).  When determining if deliberate indifference amounts to conscience

shocking, the Sixth Circuit has identified three considerations for the court: (1) the voluntariness of the plaintiff's relationship with the government; (2) whether there was time for the government actor to deliberate; and (3) whether the government actor was pursuing a legitimate governmental purpose. *Hunt*, 542 F.3d at 535. It does not appear that any one consideration is determinative. Indeed, the Sixth Circuit has stated that a "critical question" of deliberate indifference is whether the circumstances allowed time for the governmental actor to consider fully the potential consequences. *Range*, 763 F.3d at 590 (citing *Ewolski*, 287 F.3d at 510). Here, the plaintiffs have alleged that HCDE was aware for a matter of days if not weeks of Walker's reckless behavior. Taking the allegations as true, HCDE's decision to continue to instruct students to board Walker's bus, despite the concerns over his dangerous driving, was not made in haste. The Court finds that taking the allegations in the light most favorable to the plaintiffs, the allegations are sufficient to allege deliberate indifference on the part of HCDE to defeat a motion to dismiss.

While the plaintiffs have pled an affirmative act on behalf of HCDE, they have failed to do so of defendant Coulter individually. The plaintiffs do not allege that defendant Coulter individually instructed any students to board the bus after school. The allegation states "the Defendants" without any other particularized allegation as to defendant Coulter giving instructions to the schoolchildren. A general allegation as to "the defendants" is not sufficient to find that the plaintiffs have alleged that Coulter individually instructed any student. The plaintiffs have not alleged that defendant Coulter was even on-site at Woodmore Elementary School that day, or any other day. This allegation is insufficient to find an affirmative act by defendant Coulter individually. The plaintiffs also allege that defendant Coulter, "on behalf of [HCDE] and Durham, admonished Walker to stop referring so many students for discipline." The plaintiffs have failed to identify how this act, assuming it is true, created or increased the students' risk of harm. The

Court does not find that this affirmative act either created or increased the children's risk of harm inflicted by Walker. The plaintiffs have failed to show that Coulter is liable for Walker's actions under the state-created danger theory.

### iii. Governmental Liability under § 1983

Even assuming that Coulter or an employee of HCDE violated the plaintiffs' constitutional rights under the state-created danger theory, the plaintiffs have failed to show that the violation is attributable to HCDE as a governmental entity. It is firmly established that a municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom. *Id*. The plaintiff must show "that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). Such a custom must be "so permanent and well settled" as to have the force of law. *Richardson v. Huber Heights City Schools Bd. of Educ.*, 651 F. App'x 362, 366 (6th Cir. 2016)). Where the plaintiff has alleged a custom of failing to act, the plaintiff must show that "the need to act is so obvious that the [entity's] conscious decision not to act can be said to amount to a policy of deliberate indifference." *Id.* (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 2004)) (internal quotations omitted). To do so, the plaintiff must show:

> (1) The existence of a clear and persistent pattern of … abuse by school employees; (2) notice or constructive notice on the part of the [entity]; (3) the [entity's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [entity's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Id.* (citing *Doe*, 103 F.3d at 508). Deliberate indifference "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to the harm. *Doe*, 103 F.3d at 508.

The only official "policy" alleged by the plaintiffs' is the Transportation Policy, which was cited to in the amended complaint and attached as exhibits in the pleading of these motions. The plaintiffs' allegations relating to the Transportation Policy are that Walker failed to adhere to the policy requirements of following all traffic laws and promoting the safety of students. Indeed, they allege that Walker was in violation of the Transportation Policy. The plaintiffs' have failed to allege that Walker's actions were in accordance with or following the Transportation Policy. The Transportation Policy cannot be the basis of governmental liability under § 1983 because the alleged unconstitutional behavior would have been in violation of the policy.

The plaintiffs argue that they have sufficiently alleged that their injuries were proximately caused by HCDE customs, policies, and practices but have not specifically indicated what those customs consist of. [Doc. 40 at 17]. It appears from the reading of that section of the response that the plaintiffs allege that there was a custom to ignore complaints and a failure to act regarding Walker's reckless driving and conduct. The plaintiff must allege a "clear and consistent pattern of abuse" by HCDE in order to hold them liable under § 1983. However, a thorough reading of the complaint merely alleges that HCDE, through its employees, became aware of any complaint about Walker's driving "[i]n early November 2016." [*Amended Complaint* ¶ 35 ("In early November 2016, the Defendants had received written complaints from District employees, parents and children that Durham employee and school bus driver Johnthony Walker was recklessly endangering the safety of the young children on his route at Woodmore Elementary School.")].[2]

_____

[2] In their motion to dismiss and response to the motions, the HCDE defendants and the plaintiffs discuss various pieces of evidence regarding complaints about Walker's driving and HCDE's response to the complaints through emails and

However, taking the plaintiffs' allegations as true, the plaintiffs' have alleged nothing more than that HCDE was made aware "in early November 2016" of Walker's alleged reckless driving and failed to act before the tragic accident occurred on November 21, 2016, less than three weeks later. Even reading the complaint in the light most favorable to the plaintiffs, this allegation is insufficient to establish a "clear and persistent pattern of abuse" where there are only two specified complaints, [*Amended Complaint* ¶¶ 36, 37], and the allegation that "on several occasions" Walker was driving recklessly. These allegations, even taken together, do not plausibly allege a "clear and persistent pattern of abuse" by HCDE of ignoring the complaints.

In their response to the motion to dismiss, the plaintiffs also argue they have sufficiently alleged "the district had a custom, practice, and policy of assigning drivers to a route notwithstanding their lack of qualifications, their history of reckless driving, and/or their pattern of injurious conduct. [Doc. 40 at 33]. The Court does not agree that such allegations are contained in the complaint. The only allegation relating to HCDE "assigning drivers to a route" is the allegation discussed above that "upon information and belief, Johnthony Walker was placed on Bus 366 by Durham and [HCDE] as punishment after being removed from another bus route in Hamilton County." [*Amended Complaint* ¶ 65]. This single allegation, assuming it is true, fails to allege any custom or practice as it alleges only a single instance of reassignment. The allegations are insufficient to allege an HCDE custom to provide governmental liability under § 1983.

## C. Count Three

Count Three alleges a conspiracy to deprive the plaintiffs of a constitutional right pursuant to "42 U.S.C. § 1985." In their response, the plaintiffs note that this section of the complaint

---

a Bus Log. This evidence may indicate that HCDE was aware of complaints regarding Walker's driving as early as September 2016. However, this information was not alleged in the complaint and is not properly before the Court for consideration on the motions to dismiss.

contains a typographical error and that they intended to bring Count Three pursuant to § 1983. In their response, the plaintiffs also requested leave to amend the amended complaint to correct this error, but have not filed a motion for leave of court to amend the amended complaint. Because the Court finds that the plaintiff has failed to state a claim under § 1983 against all defendants above, and the allegations of Count Three are based on the same conduct of Counts One and Two, the request is moot.

## D. Counts Four and Five

Counts Four and Five of the Amended Complaint allege state law claims of negligence, gross negligence, and assault and battery. The Court has dismissed the § 1983 claims against all defendants, the basis for original jurisdiction in this matter. The only basis for federal court jurisdiction over these state law claims is supplemental jurisdiction. 28 U.S.C. § 1367. A court may decline to exercise supplemental jurisdiction if the state law claims "substantially predominate over the claim or claims over which the district court has original jurisdiction" or where the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367(c)(2), (3). Because the Court has dismissed the only claims based in federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, Counts Four and Five of the Amended Complaint.

## E. Conclusion

Defendant Durham's motion to dismiss, [Doc. 21] is GRANTED. Defendants HCDE and Coulter's motion to dismiss, [Doc. 24], is GRANTED. Counts One, Two, and Three alleging violations of § 1983 are DISMISSED WITH PREJUDICE as to all defendants. Counts Four and Five are DISMISSED WITHOUT PREJUDICE. The motions to stay discovery, [Docs. 45, 46], are DENIED as MOOT. The motion for scheduling conference, [Doc. 48], is DENIED as MOOT.

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE